UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 19-CR-30006 |
| RINALDO ROBINSON, | ) |
| | ) |
| Defendant. | ) |

### GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO RECONSIDER DETENTION ORDER

COMES NOW the United States of America, by John C. Milhiser, United States Attorney for the Central District of Illinois, and Assistant United States Attorney Victor Yanz, and hereby responds to the defendant's motion to reconsider the Court's detention order. In support thereof, the United States submits the following:

1. On February 5, 2019, a Grand Jury in this District returned an indictment charging the defendant with one count of possession of a firearm by a felon. (R.1) On February 14, 2019, the defendant appeared before this Court for his initial appearance and arraignment. The same day, the Court also held a detention hearing, and thereafter ordered that the defendant be detained because he would pose a danger to the community if released on bond. (R.6, p.1)

1

2. On February 22, 2019, the defendant filed his Motion to Reconsider Detention Order, offering information that the defendant did not provide to the U.S. Probation Office prior to the creation of his pretrial bond report, and making additional argument that the defendant would not be a danger if released. (R.7) The government respectfully disagrees with the defendant's position, and believes the Court's determination of detention was sound and supported by the facts.

3. The Court shall order a defendant be detained if the Court finds that no condition or combination of conditions will either (1) reasonably assure the appearance of the person as required, or (2) reasonably assure the safety of any other person and the community. See 18 U.S.C. § 3142(e) and United States v. Portes, 786 F.2d 758, 765 (7th Cir. 1985).

4. The burden of proof is different for the risk of flight and risk of danger analyses. In order for a defendant to be detained under the danger prong, the United States must prove by clear and convincing evidence that no condition or set of conditions will ensure the safety of the community. 18 U.S.C. § 3142(f). For a defendant to be detained under the risk of flight prong, the United States need only prove by preponderance of the evidence that no conditions will ensure the defendant's appearance in court. Portes, 786 F.2d at 765.

5. In determining whether there are conditions of release sufficient to ensure the defendant's appearance and the safety of the community, the Court is to consider the following factors: (1) the nature and circumstances of the charged offense; (2) the weight of the evidence; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community that would be posed by release. 18 U.S.C. § 3142(g). Each of these factors are addressed below.

### Nature and circumstances of the charged offense

6. The nature and circumstances of the offense charged demand that the defendant be detained pending trial. First, as part of this step of the analysis, the detention statute directs the Court to consider whether the offense involves a firearm or a controlled substance. 18 U.S.C. § 3142(g)(1). Obviously, the charged offense involves a firearm, and thus this factor weighs in favor of detention. In addition, when police stopped the defendant's vehicle immediately prior to discovering the firearm, the defendant possessed a small amount of marijuana, and one of the passengers traveling with the defendant possessed small amounts of marijuana and methamphetamine. While the government does not impute knowledge of the drugs carried by the other passenger to the defendant, these facts are nonetheless relevant. The purchasing or selling of controlled substances can

often be dangerous. Parties to these transactions generally use cash, and as a result, are at higher risk of being targeted for robberies. The very fact that the defendant carried a firearm as a drug user, and in the same vehicle as another drug user, increased the likelihood that he would be in a position to have to use the firearm. This holds true even if such use would be for the protection of the defendant or others; any use of the firearm whatsoever would cause risk of harm to the community.

7.  Similarly, the defendant lived a lifestyle that he believed put him at greater risk of being targeted for harm. This is demonstrated by the fact that, at the time of his arrest, he had $11,619 in cash on his person. Additionally, he told police that he chooses to keep his money at his home instead of a bank. He stated that he obtained the firearm because he was concerned about being robbed after winning a large settlement from his employer. The implication is that other people were well aware of his financial windfall, and still that did not dissuade the defendant from carrying large amounts of cash. Indeed, the defendant apparently spent his money lavishly,[1] and perhaps as a consequence, he believed that he was at risk of being robbed. That is, by his own admission, the very reason he possessed

---

[1] His testimony regarding his current financial situation before this Court on February 14, 2019 supported the appointment of the Federal Public Defender, despite the fact that just five months prior, the defendant received a settlement check of $133,313.94.

the firearm. In other words, instead of using a bank and living modestly, he chose to carry a wad of cash and give the appearance of extravagance, even though it meant that he had to protect himself with a firearm. This is not the logic of a man who presents no harm to the community.

### The weight of the evidence against the defendant

8. The government has significant evidence supporting the charge in the Indictment. Specifically, the defendant admitted that the firearm was his, and that he purchased it for $200. He further stated, as noted above, that he had recently received a significant financial settlement from his employer, and that he was concerned that people were going to rob him. These statements are corroborated by two additional pieces of evidence in the government's possession: (1) of a copy of a check dated September 14, 2018, from Travelers Insurance Company, payable to the defendant and a law firm in the amount of $166,000; and (2) a copy of another check dated September 18, 2018, from the same law firm, payable to the defendant, in the amount of $133,313.94. Finally, the government will prove the defendant's status as a felon with certified court documents.

### The history and characteristics of the person

9. The defendant has a significant criminal history, including numerous felony convictions, as well as indications of violent tendencies.

The defendant's first felony drug conviction came in 1989, when he pleaded guilty to manufacture/delivery of marijuana, and received probation. In the same year, he pleaded guilty to the felony offense of theft of a firearm, again receiving probation. In 1991, he was convicted of manufacture/delivery of a lookalike substance, and received a four-year sentence in the Illinois Department of Corrections (IDOC). The defendant pleaded guilty in 2018 to delivering methamphetamine, and he was on bond in that case, awaiting sentencing, at the time of his arrest in the instant case. Of the defendant's numerous non-felony offense convictions, some that the Court may deem relevant include a 1988 battery conviction, and findings of guilt for the citation of "fighting" in 2003 and 2005.

10. The defendant's history also demonstrates that there is significant risk he will not adhere to the Court's conditions, should he be released on bond. Not only was defendant on bond for a felony drug case (to which he already pleaded guilty) when he committed this offense, he was also on bond for a *second* state felony case for theft (Adams County case number 18-CF-648). So, the defendant violated the bond on his felony drug case by allegedly committing a felony theft, and then violated the bonds on *both* cases by committing the instant offense. In addition, at the time of arrest, the defendant possessed marijuana and admitted to using

methamphetamine the day prior. Presumably, both actions would also be in violation of the bond conditions in his state cases. Finally, in one of his prior cases (a 1994 misdemeanor drug conviction), the defendant's probation was revoked and he was re-sentenced to 33 months in the IDOC. In summary, the defendant has repeatedly demonstrated that he is unable or unwilling to abide by terms of non-custodial court supervision, and that fact weighs heavily in favor of detention.

### The nature and seriousness of the danger to any person or the community that would be posed by release

11.   Congress has determined that certain individuals cannot exercise their Second Amendment right to bear arms because they pose an increased risk of danger to the community. This list includes both convicted felons, as well as users of controlled substances. See 18 U.S.C. § 922(g)(1), (g)(4)). As argued above, not only is the defendant a user of drugs, but he associates himself with users as well, increasing the risk that he would create, or at least be part of, a situation that could further pose danger to the community.

12.   In summary, the Court's determination that the defendant should be detained pending resolution of this matter was sound, sensible, and supported by the evidence. Nothing presented in the defendant's motion is

new information that could not have been presented to the Court at his original detention hearing, and it is not enough to reverse the Court's rational judgment. The government argues that the evidence put forth at the detention hearing is sufficient to support the Court's detention order. However, to the extent that the Court feels it must rely on facts as proffered in this response, but which were not a part of the detention hearing, to make such a determination, the government submits that such facts could be made part of the record at a hearing on this motion.

WHEREFORE, the government respectfully requests that the Court deny the defendant's Motion to Reconsider Detention Order.

>Respectfully submitted,
>
>JOHN C. MILHISER
>UNITED STATES ATTORNEY
>
> /s/ Victor Yanz
>Victor Yanz
>Assistant United States Attorney
>U.S. Attorney's Office
>318 South 6th Street
>Springfield, IL 62701
>Telephone: 217/492-4450
>Victor.Yanz@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on February 27, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Joe Hartzler, Assistant Federal Public Defender
Counsel for the defendant

                                              */s/ Victor Yanz*
                                              Victor Yanz
                                              Assistant United States Attorney